RYALS, et al. *v.* DOUGLAS.

In Banc. Mar. 14, 1949.

(39 So. (2d) 311)

696

Roberson, Luckett, & Roberson, for appellants.

Vincent **J. Brocato,** for appellee.

Roberson, Luckett & Roberson in reply.

710

Hall, J.

Appellee, Douglas, brought suit by attachment in chancery for collection of $5,225 alleged to be due him by Joe F. Ryals, a nonresident, for breach of warranty in connection with sale of automobiles by Ryals to Douglas. Lee Collins, a resident, was also named as a defendant and was alleged to have in his possession a truck belonging to Ryals. The bill prayed for process as provided by law in cases of attachment in chancery, that decree be had against Ryals for the amount sued for, and that the truck in possession of Collins be subjected to complainant's demand. Ordinary summons was issued, with copy of the bill of complaint attached, and a copy was served on Collins and a copy on Ryals, pursuant

to Section 2730 of the Mississippi Code of 1942 which deals with attachment on personal property.

Two days later Douglas filed a supplemental bill alleging that Ryals owned certain land in this State, as therein described, subject to two deeds of trust of record, one in favor of Mrs. C. W. Costello and one in favor of O. H. Johnston, in both of which Stovall Lowrey was named as trustee, and these parties were made defendants. The supplemental bill prayed for attachment of the real estate, for sale of the interest of Ryals therein, and for application of the proceeds of sale to complainant's demand. No writ of attachment was ever issued in the case and no levy was made upon the land. Instead, the complainant, by his attorney, filed a lis pendens notice giving the names of the parties, the description of the land, with the statement that by the suit it is sought to fix and enforce a lien against the land in order to effect a sale thereof and the application of the proceeds of sale to the payment of complainant's claim.

Mrs. Costello, Johnston and the trustee filed a joint answer setting up the said respective prior liens and praying that they be recognized and protected, and that any decree be made subject to their rights.

Joe F. Ryals answered and denied the indebtedness and denied that he owned the truck in possession of Collins and denied that he owned the land described in the supplemental bill. He alleged that the land was owned by his wife, Mrs. Katie Ryals, that it was purchased by her and all payments thereon had been made by her out of her own personal funds, that no part of the same was made by him, that the deed was made to him through error and mistake, and that in order to rectify this mistake he had conveyed the land to her.

Collins answered and denied that the truck in his possession was the property of Ryals, and claimed ownership thereof himself.

Mrs. Katie Ryals, Harry C. Pierotti, and Roberson, Luckett & Roberson, a partnership firm, filed separate

motions for permission to intervene, which motions were sustained and they filed their separate interventions. Mrs. Ryals alleged that the real estate was purchased by her, with her own personal funds, that the initial payment was made with her money and that she had paid with her own funds all installments thereafter falling due on the Costello and Johnston notes; that the original deed was made to her husband through mistake and that the same has been rectified by a conveyance from her husband to her; she also alleged that the aforesaid lis pendens notice creates a cloud on her title to the land, seriously affecting her ability to sell or encumber the same, and she prayed for a cancellation of the lis pendens notice as a cloud upon her title.

Harry C. Pierotti alleged in his intervention that he holds a valid deed of trust lien from Ryals and wife upon the land in suit, securing an indebtedness of $2,500, that his lien is superior and paramount to any right which complainant may have to subject the land to the payment of his claim against Ryals, that the lis pendens notice creates a cloud upon the lien of this intervenor which, unless cancelled, will seriously impair said lien and interfere with the enforcement thereof.

Roberson, Luckett & Roberson alleged in their intervention that they hold a valid deed of trust lien from Ryals and wife upon the land in suit, securing an indebtedness of $750, and the same allegations are then made as contained in the Pierotti intervention.

The deed to Mrs. Katie Ryals and the deeds of trust to Pierotti and Roberson, Luckett & Roberson, were all executed and placed of record subsequent to the filing of the lis pendens notice.

The Chancellor decreed a personal judgment in favor of Douglas and against Joe F. Ryals in the amount sued for, from which no appeal has been taken. The decree also adjudged Lee Collins to be the owner of the truck mentioned in the original bill, and no appeal has been taken therefrom. The decree then adjudged that Joe F.

Ryals was and still is the owner of the land in question, that Katie Ryals has never been the legal owner thereof and that she does not have any right, claim, interest or title therein, and that the deed to her from Joe F. Ryals is fraudulent and void, and that the rights of Pierotti and Roberson, Luckett & Roberson are subordinate and subject to the claims and demands of complainant who was adjudicated to have obtained a lien on the date of the filing of the lis pendens notice subject to the prior liens of Mrs. Costello and Johnston. The three interventions were denied and dismissed and the land was ordered to be sold, subject to the Costello and Johnston liens, to satisfy the indebtedness owing by Joe F. Ryals to Douglas, and the intervenors have appealed.

It is admitted by appellants that since summons was personally served on Joe F. Ryals on the original bill the trial court was authorized by Section 2729 of the Mississippi Code of 1942 to give a decree in personam against him, but it is contended ▆▆ that the appellee has never obtained any lien upon the land for the reason that no writ of attachment was ever issued or levied thereon, and that the mere filing of a lis pendens notice by appellee's attorney is insufficient to create such a lien. We are of the opinion that appellants' contention is correct.

Section 2731 of the Mississippi Code of 1942, dealing with attachments in chancery against land, specifically provides "If the land of the non-resident, absent or absconding debtor be the subject of such suit, a writ of attachment shall be issued, and shall be levied by the sheriff or other officer as such writs at law are required to be levied on land, and shall have like effect."

Section 1904 of the Mississippi Code of 1942 provides "In case of a levy of an attachment on real estate in the occupancy of any person, the officer shall go to the house or upon the land of the defendant, and there declare that he attaches the same at the suit of the plaintiff; but if the land be unoccupied, or if the process be an execu-

tion, he may attach or levy upon the same by returning that he has attached or levied upon the land, describing it by numbers or otherwise properly, and, if the process be an attachment, stating that the land is unoccupied . . ."

Section 756 of the Mississippi Code of 1942 provides "When the sheriff, United States marshal, or other officer, shall levy upon real estate by virtue of any process, unless it be in execution upon a judgment which is duly enrolled in the county where the real estate is situated, he shall file with the clerk of the chanceray court of each county in which the real estate, or any part thereof, is situated, a notice of the levy, containing the names of the parties to the proceedings, the kind of process, and a description of the real estate levied on. . . ."

There is no contention by appellee here that any of the mandatory provisions of the aforesaid statutes were complied with. In fact the record shows conclusively that there was no effort to comply with any of them.

In Griffith's Chancery Practice, Section 488, it is said: "An attachment in chancery does not relate back to the date of the filing of the bill, but from the date of levy." And in Slattery v. P. L. Renoudet Lumber Co., 125 Miss. 229, 87 So. 888, 889, this court said: "No lien could be established until the writ was served. It is the seizure of property under attachment proceedings that creates the lien on the property."

We find, therefore, that the appellee obtained no lien upon the land involved in this suit, that the issuance and levy of a writ of attachment was absolutely necessary before such lien could be created, and that the mere filing of a lis pendens notice in this type of suit by counsel for the complainant was insufficient to create a lien paramount to others thereafter validly created.

Appellee argues, however, that by their appearance herein the intervenors waived the necessity of issuance and levy of a writ of attachment. As heretofore pointed out, each intervention made a direct attack upon

the lis pendens notice, alleged that the same creates a cloud upon the respective claims and liens of the intervenors, that their claims are superior to those of the complainant, and prayed for a cancellation of the notice as a cloud upon their respective claims and liens. Exactly the same situation prevailed in Slattery v. P. L. Renoudet Lumber Co., supra, wherein the court said: "The lis pendens notice would appear to create a cloud on the title of these appellees. It might seriously affect their ability to sell or finance said property so long as the attachment proceedings stood against them. It is true it could file a separate bill to have these notices cancelled, but we think it could also intervene and prevent the establishment of a cloud by a judgment of the court. Whenever a party has a claim to property in litigation, which might be adversely affected by the litigation, though he is not a party to the litigation, he may become a party on motion for the purpose of protecting his own property from being jeopardized or his title from being beclouded." To the foregoing we may add that by so intervening a party does not waive any defects theretofore existing in the proceedings. In this case the intervenors made a direct attack upon the abortive effort of complainant to obtain a lien upon the land; they alleged that their rights were superior to those of complainant and that the lis pendens notice created a cloud thereon which they were entitled to have cancelled. They followed precisely the procedure approved by this Court in the Slattery case and by so doing they waived nothing.

Appellant, Mrs. Katie Ryals, contends further that the Chancellor erred in decreeing that her conveyance from Joe F. Ryals is fraudulent and void and in cancelling all claim which she has to the land and in adjudicating Joe F. Ryals to be still the owner thereof. This contention necessitates a review of the evidence bearing in mind the rule that a Chancellor's finding on the facts is reviewable on appeal only when it is manifestly wrong and the further rule that his finding will

not be disturbed on appeal where the evidence is conflicting or where there is enough competent evidence to sustain the decree. Griffith's Chancery Practice, Section 674.

Called as an adverse witness for cross-examination, Joe F. Ryals testified that in March 1947 he and his wife approached the owners of the property in question with the view of obtaining a price thereon, and the owners advised that the property was listed with O. H. Johnston, a real estate agent, and that they would have to see him. Later the two of them contacted Johnston and agreed upon a purchase price of $6,000 out of which Johnston was to receive a fee of $500, and the purchaser was to assume an indebtedness of $2,050 owing to Mrs. Costello, secured by a first deed of trust in her favor, and pay the remaining $3,950 in cash; to raise this cash payment $1,950 was borrowed from Johnston who took a second deed of trust as security and the remaining $2,000 was paid by Mrs. Katie Ryals to Johnston as agent for the owners. Mr. and Mrs. Ryals went back to their home in Memphis and Johnston engaged the services of an attorney in Clarksdale to prepare the necessary papers. This attorney never saw Mr. or Mrs. Ryals until the day of the trial. On instructions from Johnston this attorney named Joe F. Ryals as grantee in the deed. This deed was sent to Memphis and was there executed by the owners twelve days later and was then returned to Johnston. Some time afterward Mr. Johnston drove out to this property, which is on Moon Lake, and delivered the deed to Mrs. Ryals; they had company at the time and she did not read it but merely put it away. Later Mrs. Ryals paid notes to Johnston aggregating $500 and she also paid the notes to Mrs. Costello as they became due. Ryals testified positively that all of the aforesaid payments were made by Mrs. Ryals out of her own individual funds, and that no part of any of them was made by him. He said that Mrs. Ryals had saved a part of the money out of her earnings as an employee of

Kroger Grocery & Baking Co., of Memphis, where she had worked for about eleven or twelve years, and that she borrowed a part of it from the Kroger Credit Union.

Mrs. Katie Ryals was also called as an adverse witness and she testified that the original payment of $2,000 was paid by her and was her own personal money and that her husband advanced no part thereof; she also testified that out of her earnings she had paid $500 on the Johnston indebtedness and also all the Costello notes which had fallen due. She testified that she had been employed in the office at Kroger's for about twelve years, that her base pay was $200 per month and that she made overtime averaging from $15 to $35 per month additional, and out of these earnings she had saved a part of the original $2,000 consideration and had borrowed the remainder. She testified that when the deed was delivered to her at Moon Lake she did not read it, but carried it back to Memphis and placed it in the safe at the office where she worked, and she did not know that her husband was named as grantee therein until after this suit was filed on June 10, 1947; that after the filing of the suit she removed the deed from the safe and then discovered that she was not named as grantee therein, whereupon she employed counsel to protect her interest. Mr. and Mrs. Ryals both testified that when the $2,000 was paid to Mr. Johnston he gave a receipt therefor to Mrs. Ryals and not to Mr. Ryals, and that the whole transaction was her deal and not his.

Mr. Johnston testified that he was acting as agent for the original owners in making the trade; that on March 15, 1947, Mrs. Ryals paid him $2,000 to bind the deal, and he identified a receipt therefor which he gave to her on that date. This receipt was offered in evidence and shows that it was made to Katie Ryals and that "notes carried by Mrs. Costello will be transferred to Katie Ryals." Mr. Johnston testified that thereafter he employed an attorney in Clarksdale to prepare a deed of trust in his favor from Joe F. Ryals and wife Katie

Ryals and also to prepare the deed from the owners. He said that he had not received any definite instructions as to who should be named as grantee in the deed and he instructed the attorney to make the deed to Joe F. Ryals. Johnston's deed of trust is dated April 17, 1947, and is for $1,950. He testified that he deposited the $2,000 to his own credit and issued his check to the owners for $3,450, and that the remaining $500 included in the deed of trust was his fee for handling the sale. He also testified that Mrs. Ryals had paid to him the total sum of $500 on this indebtedness and that Mr. Ryals had paid no part of any of the consideration in connection with the purchase. This witness had no earthly interest in the controversy and is apparently a reliable and trustworthy business man. The deed was executed to Joe F. Ryals by the owners on April 29, 1947, but was not filed for record until after the institution of this suit.

The attorney who prepared the deed and deed of trust testified that he prepared them at the instance of Mr. Johnston and in accordance with instructions given him by Johnston and that he did not at any time see or confer with Mr. or Mrs. Ryals in connection therewith, and did not even know them.

The only shred of testimony in the entire record in this case which even remotely tends to contradict the foregoing statements of the evidence is that of the appellee who testified that on one occasion, prior to the filing of this suit, Ryals was in his office and saw on the wall a picture of a boat and offered to trade a Cadillac car for the boat and said "I have got a piece of property down at Moon Lake Club House and I would like to get that boat and take it down there." We are unable to find in this statement any competent evidence which rises to the dignity of contradicting the undisputed facts shown by the record here. We have searched the record in vain in an effort to find something therein on which to sustain the decree. ██ █ Every witness who knew anything at all about the transaction testified positively

that the property was bought with the individual personal funds of Mrs. Ryals and that all subsequent payments thereon were made by her out of her own earnings. Under this state of facts Mrs. Ryals would have been entitled to enforce a resulting trust in her favor. A. L. I. Restatement Trusts, Sec. 440; Shrader v. Shrader, 119 Miss. 526, 81 So. 227; Moore v. Moore, 74 Miss. 59, 19 So. 953; Robinson v. Leflore, 59 Miss. 148. In recognition of this right Joe F. Ryals executed a deed to her, dated July 21, 1947, and filed for record July 23, 1947. She was entitled to this deed and it validly conveyed to her the title to the land in controversy free of all claims of the appellee for the reason that the appellee, as hereinabove shown, did not obtain a lien on the land by the mere filing of a lis pendens notice without the issuance and levy of a writ of attachment. The Chancellor's finding that the conveyance to Mrs. Ryals by her husband was in fraud of his creditors is manifestly wrong and is not supported by any competent evidence. With reference to the Chancellor's rejection of all the evidence we find as particularly appropriate the following language of this Court in the case of Wilson v. Blanton, 130 Miss. 390, 94 So. 214, 216: ''It is argued here that the chancellor is the judge of the credibility and weight of the testimony, and that he observed the witnesses testifying, and that he was under no compulsion to accept their statements as being true. ██ ██ The rule is that the testimony of a witness which is uncontradicted, and who is not impeached in some manner known to the law, where he is not contradicted by the circumstances, must be accepted as true. It is true that the direct evidence of a witness may be contradicted by circumstances, but in such case the circumstances relied on for contradiction must be inconsistent with the truth of the testimony. 'When the testimony of a witness is not contradicted, either by direct evidence or by circumstances, it must be taken as true.' Stewart v. Coleman [& Co.], 120 Miss. 28, 81 So. 653. This court has so held in many cases, and we hold

that neither the chancellor nor a jury have an arbitrary right to disregard testimony, which is neither inconsistent with the laws of nature, and which is not contradicted either by direct or circumstantial evidence. The presumption is that men testify truthfully, and such testimony cannot be destroyed arbitrarily. There must be some legal reason for disregarding testimony. The mere fact that a trier of fact does not like the looks of a witness is not alone sufficient.''

Accordingly the decree of the lower court is reversed to the extent that said lis pendens notice is cancelled and Mrs. Katie Ryals is held to be the owner of the land in controversy subject only to the first lien of Mrs. C. W. Costello, the second lien of O. H. Johnston, and the subsequent liens of Harry C. Pierotti and Roberson, Luckett & Roberson, all of which are paramount to the alleged claim of appellee, and judgment will be entered here accordingly.

Reversed and judgment here.