290 So.2d 621 (1974)
Alton SAVELL
v.
Mrs. Blanche Brown SAVELL.
No. 47373.
Supreme Court of Mississippi.
February 18, 1974.
*622 Roy Noble Lee, Thomas D. Lee, Forest, for appellant.
O.B. Triplett, Jr., O.B. Triplett, III, Forest, for appellee.
ROBERTSON, Justice:
After a full hearing, the Chancery Court of Newton County, Mississippi, found and decreed that, because of a resulting trust, Mrs. Blanche Brown Savell was the beneficial owner of an undivided 1/2 interest in eighty acres of land in Newton County, and that the defendant, Alton Savell, should convey her undivided 1/2 interest to her. The court also ordered Savell to pay Mrs. Savell $90.00 per month alimony, and adjudged that she was entitled to 1/2 of the net proceeds of a fire insurance policy on the home located on the 80 acres, which home had burned to the ground.
Defendant contends that the trial court committed error:
(1) in holding that, under a resulting trust, complainant was the beneficial owner of an undivided 1/2 interest in the former homestead of 80 acres;
(2) in granting complainant $90.00 per month alimony; and
(3) in ordering 1/2 of the net proceeds of the fire insurance policy paid to complainant.
On bill of complaint filed by Mrs. Savell, the Chancery Court of Newton County, on November 17, 1969, granted the complainant a full and complete divorce on the ground of habitual cruel and inhuman treatment. The court also granted the complainant custody and control of their 18-year old daughter, ordered the defendant to pay to the complainant $75.00 per month, and found the complainant entitled to the exclusive use and possession of the residence and the 80 acres of land, "together with all furniture, fixtures, appliances and supplies as located in the home on said property." Savell was "enjoined from in anywise interfering with the said complainant, Mrs. Blanche Brown Savell in the peaceful use and occupancy of said property and the improvements thereon."
In affirming that decree on October 26, 1970, this Court said:
"The next assignment of error relates to the exclusive use of the home and farm by the wife. The parties have been married since 1945. The appellee is a middle-aged woman with no particular specialty for earning a living though she is presently employed, and moreover, she was not awarded any means of support other than the use and occupancy of the land. Under these circumstances we cannot state that the chancellor was manifestly wrong in this award." Savell v. Savell, 240 So.2d 628, 630 (Miss. 1970).
About three weeks later, on November 15, 1970, the home and all of its contents were destroyed by fire.
On December 1, 1970, Mrs. Savell filed a bill of complaint praying that the proceeds of the fire insurance, after satisfaction of the indebtedness to Veterans Farm and Home Board, be applied to restoring the home.
On November 30, 1971, Mrs. Savell filed a "Petition to Modify Former Decree or Make New Decree" in which she prayed:
"[T]hat a decree be rendered, adjudicating her to be a co-owner of the 80 acre tract above described and adjudicating that the defendant holds the half interest of complainant as trustee and establishing and enforcing a trust upon said property for the benefit of complainant; that the proceeds of said fire insurance be applied by the Court either towards *623 the construction of a new dwelling house if said defendant can be compelled to restore said dwelling house, or to be applied upon the present indebtedness of complainant on the house trailer in which she now lives on said property and that a decree be rendered awarding monthly alimony to complainant as the money equivalent of the provisions made for her by the decree of this Court of November 7, 1969."
The Chancery Court consolidated for trial the original bill of complaint filed December 1, 1970, and the petition to modify filed November 30, 1971, and after a full trial entered decree as heretofore stated.
We think that the Chancery Court was correct in its decree.
The chancellor has wide discretion and latitude in divorce and alimony matters. Mississippi Code 1942 Annotated section 2743 (1956), [Mississippi Code Annotated section 93-5-23 (1972)], provides in part:
"When a divorce shall be decreed from the bonds of matrimony, the court may, in its discretion, having regard to the circumstances of the parties and the nature of the case, as may seem equitable and just, make all orders touching the care, custody and maintenance of the children of the marriage, and also touching the maintenance and alimony of the wife, or any allowance to be made to her, and may, if need be, require sureties for the payment of the sum so allowed; and the court may afterwards, on petition, change the decree, and make from time to time such new decrees as the case may require." (Emphasis added).
However, there must be a material or substantial change in the circumstances of the parties to justify changing the original decree or making a new one. Clark v. Clark, 133 Miss. 744, 98 So. 157 (1923).
There were material and substantial changes in the circumstances of the parties after the entering of the original decree. The daughter married and became self-supporting, the home and all of its contents were completely destroyed by fire. As a result of the fire Mrs. Savell had to make other arrangements for a place to live.
Corpus Juris Secundum explains the principle on which the doctrine of resulting trusts is based in this way:
"The doctrine of resulting trusts is founded on the presumed intention of the parties; and, as a general rule, it arises where, and only where, such may be reasonably presumed to be the intention of the parties, as determined from the facts and circumstances existing at the time of the transaction out of which it is sought to be established." 89 C.J.S. Trusts § 102, p. 947 (1955).
The intention of the parties was clear in this case. The 80 acres of land belonged to Mrs. Savell's family. She and her seven brothers and sisters inherited it from her mother. When Savell and Mrs. Savell decided to buy out her seven brothers and sisters, the first quitclaim deed from her sister, Flozell Brown Reed, was made to Savell and Mrs. Blanche Brown Savell, as joint tenants. It was only when they found out that in order to get a loan from the Veterans Farm and Home Board the title would have to be vested in the veteran alone that they reconveyed the undivided 1/8th interest to Flozell Brown Reed, and thereafter all eight heirs, including Mrs. Savell, conveyed said 80 acres to the Veterans Farm and Home Board, which Board in turn conveyed the 80 acres to Alton Savell. The total purchase price of the home place was $7,000.00. Savell and Mrs. Savell sold their jointly owned home in another county and applied the $3,000.00 received on the purchase price. They both executed their note and deed of trust securing same to the Veterans Farm and Home Board and borrowed $4,000.00. Mrs. Savell received nothing for her undivided 1/8th interest (worth $875) which she conveyed to the Veterans Farm and Home *624 Board so it could in turn convey the complete fee simple title to the veteran, Alton Savell.
In Shrader v. Shrader, 119 Miss. 526, 81 So. 227 (1919), this Court said:
"One familiar illustration of a resulting trust is in those cases where lands have been bought with the wife's means and title taken in the husband's name. In the note to Haney v. Legg, 129 Ala. 619, 30 So. 34, 87 Am.St.Rep. 81, it is stated, `A resulting trust in favor of a wife is presumed from the purchase of property by her husband with her money and the taking of title in his name;' ...
... .
`It is not indispensable, however, that the whole of the purchase money should have been paid out of the funds belonging to the complainant. If any portion of it was her money, a resulting trust arises in her favor to the extent of the sum so used.'" 119 Miss. at 537-538, 81 So. at 229. (Emphasis added).
Stevens v. Hill, 236 So.2d 430 (Miss. 1970), involved a resulting trust. In Stevens, we said:
"It is the general rule in this state and elsewhere that when a transfer of property is made to one person and the purchase price is paid by another, a resulting trust arises in favor of the person who pays the purchase price. Ryals v. Douglas, 205 Miss. 695, 39 So.2d 311 (1949); V Scott, Trusts § 440 (3d Ed. 1967); Restatement (Second) of Trusts § 440 (2d Ed. 1959)... . The burden is upon the transferee to establish that he was to receive the beneficial interest. Scott, supra." 236 So.2d at 432-433. (Emphasis added).
The evidence stands uncontradicted that the only reason the title was in Savell alone was because the Veterans Farm and Home Board required it to be that way; otherwise, the Board would not make the loan. Savell offered no proof to the contrary, yet the burden was on him to prove otherwise if that were not the real reason.
The chancellor was justified in finding that by virtue of a resulting trust Savell held title to an undivided one-half interest as trustee for Mrs. Savell and should now convey her undivided one-half interest to her. Inasmuch as Mrs. Savell was the beneficial owner of an undivided one-half interest in the entire property, it follows as a matter of course that she would be entitled to 1/2 of the net proceeds of the fire insurance policy. See Morrison v. Kinstra, 55 Miss. 71 (1877).
Finally, Defendant contends that since the court did not allow alimony in the original divorce decree that this was res adjudicata of the issue of alimony and the court could not now allow monthly alimony. The awarding of the use and occupancy of the home place to the complainant in the original decree was an integral part of the support due by a husband to his wife. It was in the nature of continuing alimony payable by the month. It was subject to change if the wife remarried or, as in this case, where the home and all its furnishings burned.
In Buckalew v. Stewart, 229 So.2d 559 (Miss. 1969), we said:
"The court may impress a lien upon property to secure payment of support awards, or he may order the surrender of the possession of a family home to a wife and children as an incident to their support by way of providing necessary shelter or lodging. In the latter case, credit reasonably may be allowed by the court on the sum, which otherwise might be necessary, commensurate with the value of the lodging so provided. 229 So.2d at 562 (Emphasis added).
We have noted also that Savell was making $72.50 per week when the original divorce decree was entered, but was making $150.00 per week when the hearing was held on the petition to modify. Mrs. Savell's earnings have remained the same.
*625 Bunkley and Morse's Amis, Divorce and Separation in Mississippi (1957), § 6.11, pages 193-194, states:
"A modification or revocation of alimony which has been decreed payable continuously at stated intervals will be justified where there has been a material change of circumstances as reasonably to affect the ability of the parties to abide by and perform the original decree... . As in the case of granting the original alimony, the amount of reduction and of increase are peculiarly matters for the chancellor to decide, and unless he is manifestly in error, the Supreme Court will not disturb his findings." (Emphasis added).
The chancellor was not in error and the decree of the trial court will be affirmed in all particulars.
Affirmed.
RODGERS, P.J., and PATTERSON, SMITH and SUGG, JJ., concur.